Good morning, Your Honors. Counsel, may it please the Court, I represent the defendant appellants Pawn America, Pal Card, and Payday America. We are here today on our appeal asking you to reverse the district court's ruling that my clients waived their rights to compel the plaintiff's claims to individual arbitration. We're asking this court to direct the district court to compel those claims to arbitration and hold the plaintiffs to their arbitration agreements with my clients as they would be held to any other contract agreement in the instruction of the Supreme Court in Morgan v. Sundance. What we're asking really is a de novo review of the legal standard, most of all. In the wake of Morgan, it's our position that what this circuit has called the Llewellyn test most recently needs to be clarified to emphasize that waiver is a matter of intent. The precedence of this circuit prior to Morgan under what's called the Llewellyn test focused in part or in large part on the element of whether a litigant had substantially invoked the litigation machinery. It's our contention that is not a proxy for intentional relinquishment of a clear contract right. For instance, the precedence by simply deleting the prejudice requirement. However, the district court made no finding that my clients, the defendants, clearly intended to elect litigation in the Federal court and abandon their rights to arbitration. What it found is that they supposedly had substantially invoked the litigation machinery. What do you do, though, with what Justice Kagan said in Morgan at the end? She says stripped of its prejudice requirement, the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct. And then it says, did Sundance, as the rest of the Eighth Circuit's test asked, knowingly relinquish the right to arbitrate by acting inconsistently with that right? To me, that, and then she goes on to say maybe they want to adopt a different test on forfeiture, which is actually worse for your client, I think, than our current about our test at the end of Morgan. Well, first of all, thank you, Judge. It's a great question. I think if you go further to the very end, Justice Kagan says, you know, our sole holding today is that the Eighth Circuit and No Circuit can have some special test for arbitration waiver that it doesn't apply to other contracts waiver. And we're not saying what you, what test you need to apply because, in fact, earlier in the decision at point two, she said the parties invited us to do a whole lot here and we're not doing much. The parties invited us to say whether state law applies. The parties invited us to say what doctrine should apply to the circumstances in this. We're not deciding any of that. All we're saying is you can't have some special test for arbitration waiver. Well, let me add, let me just follow up with that. I just wonder whether the entire thing comes down to she kind of approved, or the court kind of approved of our test and whether the, without prejudice, without the prejudice, but then maybe we just need to add the caveat that the ultimate inquiry, and we have a lot of things like with McDonnell-Douglas and the, but the ultimate inquiry is did the person seeking arbitration intentionally relinquish that right? So we have the same test, but the ultimate inquiry is about intentionally relinquishing that right. Why doesn't that solve all problems? That could be the case, Your Honor. I would say what we're saying is this is a, this case presents a perfect vehicle to conduct this review because if you look at the precedent of the tests, or the cases in this circuit that were following this pre-Morgan test that focused on the substantially invoking, just as the district court's order said nothing really about our intent, neither do any of those cases. They focus on the language that had been come up with for the special arbitration waiver test, which was about substantially invoking machinery, which this Court has in this inquiry sort of, if something was prejudicial, it could be substantially invoking. If it wasn't too prejudicial, maybe it's not substantially invoking. And in the Hooper case, this Court acknowledged that in a footnote. So what, why this case is a perfect vehicle to conduct that review, if you're tweaking the test, is to say, okay, what we need to focus on is a requirement of finding of intent. What was present in all of the cases that might address that, that is not present in this case, are clear indicia of gamesmanship by the parties seeking to compel arbitration. There's nothing in the record here that meets or comes close to any of the fact patterns in any of the cases cited by the district court's order or the plaintiff's briefing, the appellee's briefing. I'm not sure I agree with that because you, you had the, you had the hearing in front of the district court. And I know Chief Judge Schultz pretty well. He asked a lot of questions and the hearings were very lengthy. And he's going to give you a pretty good indication of what he's thinking. Now maybe you say, oh, we had a great impression going out, but you have a lot of information you don't have when you went, when you walked into that hearing. And so I wonder whether you, you walk out of that hearing and say, just like in Sitzer or McCoy, I can't remember which one, but you say, well, you know, maybe it's a good idea to just take this to arbitration. We're not sure what's going to happen with Judge Schultz. Well, Your Honor, I think that, you know, we, we address, I addressed this to Judge Schultz at the oral argument on, in October of last year on the motion to compel arbitration was that the questioning, we thought, on the merits issues, the 12B6 issues that are supposedly the thing where we've, we've shown our intent that we want to pursue litigation in the federal system and, and completely relinquished our rights to compel things to arbitration was these merits issues, not the, not the 12B1 issues. On those merits issues, it, it went positively. Our, our outtake from the hearing was, well, you know, it's more of a question from the judge on our standing arguments, but he seems a little bit more likely to entertain the merits, merits questions on whether they pleaded enough for causation and damages. It might be good enough for injury, fairly traceable, but maybe not for causation and damages. So that I explained to him was the, you know, the difference here, you know, there's a case, I'm not recalling which case it is, but it's in the briefing where the indicia of gamesmanship was there's a hearing that, where the judge in, in that case clearly indicated they were going to rule against the party and then boom, the next, you know, next day or next week, they follow, they want to switch to arbitration. And even Morgan, Morgan itself, if you look at the first paragraph of the opinion, Morgan is a blatant gamesmanship case as well. It says, sometimes litigants engage in months or even years of litigation, filing motions, answering complaints, discussing settlement. And then it says, before deciding they would fare better in arbitration. That's the context that was before them there because that, the franchisor had, had blatantly tried to test the waters and only after having motion practices that was actually denied did they then switch. There's no switch in this case after we received a ruling. If we were supposedly wanted to get a good 12B6 ruling, we wouldn't have filed before we got the ruling. We, well, let me ask, I don't know what, I don't want to get into Judge Schultz's mind, but I guess one of the questions I would ask is, at least by the end of March, you knew you had this arbitration right and I think he sort of imputed that you knew it before then because it's your contract, but at least by the end of March. So why did it take all the way to April, I mean, to July to file the motion? Why not file it right away? So this is another great question. I think that we explained some of that in our reply briefing in the court below, which we've indicated in the record here. This cyberattack that occurred on my client's systems was, in a word, catastrophic. They submitted an affidavit that said, we're still, we're over a year past this and we're still every day dealing with having to rebuild our systems that had to be rebuilt from scratch, including databases. So there was explanation given. This took a long time. First of all, you've got five plaintiffs. They have a multitude of different transactions with different entities. There's a history of changing the terms and conditions due to the cyberattack. It took a long time to figure out even which versions were in place during which time periods, and then they had to look for when did all these plaintiffs have different transactions with each of the defendants. Actually, they only had transactions with two of the defendants, but over a long period of time. And secondly, besides the fact that we really did provide an explanation, which I think the district court ignored and said we gave no explanation why we sat on our hands, we did provide affidavits saying this took a very long time to bring all this up. And that's what we have to do to meet our burden under the Federal Arbitration Act. We can't just waltz in and say, hey, we want to go to arbitration. We need to support a motion that will prove that there was an enforceable, valid and enforceable arbitration agreement with each one of these five plaintiffs. So it took the time to put that together. And, Your Honor, I think it's another reason this is a great question. It goes to kind of the way we would ask that this test, if it's preserved, be modified. And besides saying, okay, you need to focus on intent, is you don't focus on issues of diligence. In hindsight, sure, it would have been great to have filed this earlier. Absolutely. I mean, but the reason why it didn't, there was nothing rebutting that. The plaintiffs opted not to do any discovery on the arbitration, arbitration, whether, you know, it's a valid, enforceable or the waiver issue, and simply let our affidavits be the only record on these issues. But the legal standard for waiver, as Justice Kagan pointed out, you know, even under the procedural federal waiver, it's just solely about the intent of the movement. You know, these issues of whether we could have done better, the language of we have to do everything possible to safeguard this right. I mean, you don't treat any other contract right with that much, with a heightened level of super diligence requirement to assert your rights. And I think that's the upshot, the big picture of Morgan is you don't treat it any better. You know, there's no favoring arbitration. But you also, you don't treat it any worse. That's certainly the congressional intent of the Federal Arbitration Act. Why not, though, go in on Judge Molloy's question? Why not go in and say, look, we've got, we believe on two of the five plaintiffs, we're solid. Like, there's a valid arbitration agreement. We're doing research. We're trying to pull up the records. This is a placeholder. We'll have records available by, say, July. And, but we just want to preserve, be clear that we're trying very hard right now to preserve the right, and we know on this one or two plaintiffs we can, you know, that we can win on the arbitration motion. To say, A, in hindsight, we should have said that more. I think the record is also clear we did bring this up at the Rule 16 conference, and there's no dispute that I also said this is a reason to stay, discovery. We're looking into arbitration, and at that point, we believed it applied to all five plaintiffs, but we needed some time to come up with the documentation. And there's really no dispute from the, I mean, they admit, I mentioned arbitration and as a basis for stay. Their only quarrel is I didn't say we were definitively going to file a motion, which they argue, and the court also, the district court also, even if I had said that, that wouldn't have done any better under the test that he's applying because it's this lens of super diligence under the test that that part should be eliminated because it's about intent. And I think there's plenty of contradictory evidence or evidence that's inconsistent with us supposedly having an unequivocal attempt to elect Federal litigation. Everything we did was to try to stop their ability to proceed in Federal court, and we asked for a stay and received a stay of discovery. If there's no other questions, I'd like to reserve my time for rebuttal. Thank you. Thank you. Ms. Regan. Good morning, Your Honor, and may it please the Court. The district court's order should be affirmed. The court did not clearly err in its fact-finding process or determination that defendants knew of their arbitration rights and their arbitration contracts, some of which are available publicly on their website, nor did it clearly err in finding that the defendants failed to fully apprise plaintiffs and the district court of those contracts and their intent to enforce those contracts. At what point in time did you receive the actual contracts for the five named plaintiffs? July 2022, July 11th, I think it was. So you didn't receive them before the motion to compel was filed? Yeah. The timeline was that we had in July a scheduled mediation with retired Magistrate Judge Keyes, and that, I believe, was on the 19th. We were served with the contracts in a letter. And actually, I don't know if we had the actual contracts, but we did have a letter saying that the defendants intended to move to compel arbitration. So we had the letter, the mediation on July 19th, and then on July 22nd, there was the notice to the district court. All of that means that the defendants waited to inform plaintiffs and the court of their intent to move to compel eight months after the action was first filed in the district court, five months after defendants moved to dismiss under Rule 12b-6 and 12b-1, and three months after the motion to dismiss hearing before Judge Schultz, during which it is undisputed defendants did not indicate they wanted to move to compel or enforce arbitration rights. As a result, the district court's order holding that defendants, by their litigation conduct, waived arbitration is not erroneous as a matter of law. The court can affirm and personally identifying information was stolen in the breach due to defendants' lack of care and diligence and failure to protect that data should proceed in the district court. The defendants, as you hear, are attacking the district court's order on two grounds and are asking for the waiver tests to be tweaked. This case does not present that opportunity for the court to do so. The court has already examined the test for Morgan, has affirmed it in a number of decisions since Morgan, and it is, did you know of the right to arbitration and did you act inconsistently with that right? In this circuit, as in others, inconsistent action is the litmus test for waiver. There are very few other examples that I can think of where a court has found waiver of an arbitration contract in a different type of case, but it is almost always litigation conduct, and here the litigation conduct rises to the level of waiver. Well, you know, the thing that I find a little troubling is less the litigation conduct and more the knowledge. It appears to me that Chief Judge Schultz relied on almost a constructive knowledge theory and you heard opposing counsel say, we actually didn't know until we pulled up all of these agreements that people signed to know whether or not they had an arbitration clause, and I just want to give you a chance to address that. Yeah, I understand. Well, first, I don't think the court pulled that test out of thin air. It's a test from Erdman. It's a test from other cases. Constructive knowledge, imputed knowledge has always existed, and that's because if you're a party to a contract, if you sign the contract, you are deemed to know of that contract. Plaintiffs were deemed to know of their contract when plaintiffs moved to compel, so therefore, the defendant, that should equally be held against the defendants here. If what they're really saying is it took us time to get everything together, but we know we have these, and again, we're talking about products that were in the complaint. We allege they purchased certain types of products or certain types of contracts. If you look at the record and if you look at the declarations they submitted, this was an all-encompassing arbitration scheme. It was on the pawn tickets, it was on the debit cards, all of that, and some of that, again, you can go to the website and figure it out. They could have done just as what Judge Malloy suggested, which is in April, send a letter to the district court. Don't consider our motion to dismiss. Let's not go forward with a hearing. We need time to investigate that. We don't do it. Suppose, though, that the rules were reversed and you have the consumers seeking arbitration. Like when I walk out with a receipt, sometimes, you know, I throw it away. Sometimes I, you know, file it away for tax purposes, but most receipts probably go in the trash can, which is a little embarrassing to say. But you could see a situation in which I have no knowledge of my right to arbitration, and then I say six months later, I look on the website, I'm like, wow, there is actually a right to arbitration. Maybe I should bring it. So, I mean, maybe it's different for a big corporation, but you can at least conceive of possibilities where people don't know about their right. Yes, and I think that was addressed by the court's opinion in Foster, right, where depending on how they bought that particular card from Walmart, they didn't actually have the contract, and so discovery was necessary. That wasn't the case here. The defendants knew about that. So, and just as a practical matter, I think it would be rare that the consumer was trying to arbitrate an issue, but that happens. I mean, it certainly happens when you have a number of different parties and a defendant who really doesn't know until discovery that they are a beneficiary of an arbitration contract, but in this case, that's not the case. But the court also just didn't misapply the law here. It correctly articulated the facts that it had before it. And with respect to the arguments, and I didn't hear too much of that today, but with respect to the arguments that defendants make in their briefing regarding how that state waiver law now applies, again, with respect to Minnesota and Eighth Circuit law, there's no conflict. There is somewhat of a conflict in other states depending on how the test as applied in those circuits would apply, but that's just not the case here. Similarly, even if you don't impute knowledge at the inception of the litigation, which we think you should, they still fail to move on arbitration rights until after the motion to dismiss hearing and after other litigation hearing and after a mediation. So the court doesn't need to guess at what's going on. There's no doubt what they were trying to do. They were trying to wait to see what would happen on the motion to dismiss, and then either on jurisdictional or standing grounds or 12b-6 grounds, they were hoping for a better result. I want to address a couple issues which haven't come up in argument but were presented to the court in the briefing with respect to the jury trial issue on waiver. We don't think this case is necessary to decide whether under Section 4 there should be a jury trial on this waiver issue or defendant's knowledge, per se. And then I do think that Foster indicates when a jury trial would be appropriate, but it doesn't apply here. There's no need to reference state waiver law in this case, conduct a jury trial, and it's not a hard case in light of this Court's decisions in McCoy, in Sitzer, Morgan, many of them. Defendant's litigation conduct waived their arbitration rights and the district court's order should be affirmed. Thank you, unless you have any other questions. Seeing none, thank you very much. Thank you. Mr. Hayde, your rebuttal. Your Honors, unless you have questions based on counsel's argument, I'll make a few points of my minute. So first of all, the comment that this Court has already, you know, post-Morgan clarified the test, I don't think that that's accurate. The 28J case that they filed yesterday afternoon that came out two months ago, the Bretto's, I mean, that was really an election of arbitration. It was a plaintiff. It's a blatant gamesmanship case. There wasn't an analysis of what, you know, whether the standard needed to be adjusted. So here, this is clear that in any other case, for any other contract right, you would look to State law standard for whether waiver defeats a contract right. It doesn't really matter if it's State or Federal law. What we're asking is that this case presents a good vehicle to say you need to make a specific finding of intent that is clear and unequivocal to give up your rights to arbitration based on litigation conduct. And those findings were not made here, and the record doesn't support such findings. In fact, the plaintiff's briefing and their argument never argues that they would satisfy that standard. They only argue that it satisfied the substantially invoking test that predates Morgan. Thank you. Thank you.